# United States Court of Appeals
## For the First Circuit

---

No. 99-1432

JOHN DOE,

Plaintiff, Appellee,

v.

UROHEALTH SYSTEMS, INC.,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

---

Before

Boudin, Stahl, and Lipez,
Circuit Judges

---

Brooks R. Magratten, with whom Benjamin V. White and Vetter & White, were on brief for appellant.
Albert R. Romano, with whom Romano & Spinella, was on brief for appellee.

---

June 26, 2000

---

**STAHL, Circuit Judge**.  Defendant-appellant Urohealth Systems, Inc. ("Urohealth") appeals the district court's order, entered pursuant to Fed. R. Civ. P. 41(a)(2), granting plaintiff-appellee John Doe's motion to dismiss voluntarily and without prejudice this diversity suit.  We reverse and remand.

## I.

In the late summer of 1995, John Doe sought treatment for impotence and consulted a urologist, Dr. Jacques Susset, who recommended the surgical implantation of a penile prosthesis. Doe met with another urologist, Dr. Alan Podis, who suggested that implantation of the Dura-II semirigid penile prosthesis would be  appropriate.  Doe agreed with the recommendation and the Dura-II was implanted by Podis in February 1996.

The Dura-II originally was designed and manufactured by the Dacomed Corporation ("Dacomed"), which Urohealth acquired as a wholly owned subsidiary in 1995.  After the acquisition, Urohealth manufactured and sold the Dura-II to physicians and hospitals.  It is unclear whether the actual Dura-II installed in Doe was manufactured before or after Urohealth's acquisition of Dacomed, but Urohealth has eschewed this as a defense.

About two months after the surgery, Doe began to have problems with the device. On August 6, 1997, plaintiff filed in federal district court a complaint against Urohealth for strict

liability, negligence, and breach of warranty. His complaint alleged that the Dura-II implant caused him pain, made noises, and would not operate properly.

Although the parties commenced discovery before the establishment of a discovery schedule, the district court eventually set May 1, 1998, as the last day for Doe to make expert disclosures; scheduled discovery to close on June 15, 1998; and set June 25, 1998, as the last day for the parties to file dispositive motions. At the onset of the discovery process, Doe requested many documents, and Urohealth propounded interrogatories about Doe's experts. In response, Doe identified four experts who would testify. When Urohealth deposed them, none proffered an opinion about whether the Dura-II was defective or unreasonably dangerous. In fact, it turned out that none of them had agreed to serve as an expert on Doe's behalf.

On May 4, Doe identified three new experts, but failed to disclose their opinions or the grounds on which they would base their opinions. On June 23, 1998, Urohealth moved for summary judgment. That same day, the magistrate judge assigned to supervise discovery extended the close of discovery to September 1, 1998, and adjusted all other deadlines accordingly. Urohealth objected to this extension of the discovery deadline,

but on July 29, 1998, the district court affirmed that order. In doing so, the court reprimanded Doe for his dilatory conduct while attempting to secure an expert. Eventually, on August 28, 1998, Doe furnished the resume and report of his newly named expert, Edward N. Reese, Ph.D., which prompted Urohealth to supplement its pending summary judgment motion in order to address Reese and his opinion.

Meantime, at 5:45 p.m. on August 27, 1998, the day before naming Reese as his expert, Doe noticed depositions, which were to take place in Providence, Rhode Island, of several of Urohealth's California-based employees. The deposition notices prescribed September 1, 1998, as the date for these depositions. In response, Urohealth sought and received a protective order striking the deposition notices, and the district court reprimanded Doe for his "absolutely inappropriate" discovery request. The next day, Doe filed sixty-five requests for production from Urohealth, prompting another motion for a protective order. The district court referred this matter to the magistrate judge, who granted the motion and noted that "to wait until the very last minute to file something like this is a total abuse of discovery."

On December 8, 1998, the magistrate judge heard argument regarding Urohealth's motion for summary judgment, and

two days later, ordered Urohealth to raise any objections it might have to Reese's proposed testimony in a motion <u>in limine</u>. Urohealth so moved on January 11, 1999.  On January 26, 1999, Doe filed in Rhode Island Superior Court a complaint against Dacomed, Podis, Miriam Hospital, and Imagyn Technologies, Inc.[1] Doe's state court action made the same substantive claims against Urohealth as did his federal action, but added Dacomed as a defendant as well.  Subsequently, Doe moved in federal court for dismissal without prejudice of his federal action, pursuant to Rule 41(a)(2).  Urohealth objected on the grounds that it would be prejudiced by a Rule 41(a)(2) dismissal, but the district court granted Doe's motion on March 23, 1999. Urohealth appeals.

---

[1]Urohealth changed its name to "Imagyn Medical Technologies, Inc." in 1997.  Doe inaccurately named it "Imagyn Technologies, Inc." in his state court complaint.  For simplicity, we will continue to refer to this company as Urohealth.

Rule 41(a)(2) provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Its purpose is to permit the plaintiff, with approval of the court, see Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994) (noting that judicial approval is required "to protect the nonmovant from unfair treatment"), voluntarily to dismiss an action as long as "no other party will be prejudiced," Puerto Rico Maritime Shipping Auth. v. Leith, 668 F.2d 46, 50 (1st Cir. 1981) (internal quotation marks and citation omitted). The district court is responsible under the rule for exercising its discretion to ensure that such prejudice will not occur. See Alamance Indus., Inc. v. Filene's, 291 F.2d 142, 146 (1st Cir. 1961).

In deciding whether to grant a Rule 41(a)(2) motion, courts typically look to "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by

the defendant." Pace v. Southern Express Co., 409 F.2d 331, 334 (7th Cir. 1969); accord Grover, 33 F.3d at 718. But, courts need not analyze each factor or limit their consideration to these factors. See Tyco Labs., Inc. v. Koppers Co., 627 F.2d 54, 56 (7th Cir. 1980) ("The enumeration of the factors to be considered in Pace is not equivalent to a mandate that each and every such factor be resolved in favor of the moving party before dismissal is appropriate. It is rather simply a guide for the trial judge, in whom the discretion ultimately rests."); see also Kern v. TXO Prod. Corp., 738 F.2d 968, 971 (8th Cir. 1984) ("The very concept of discretion presupposes a zone of choice within which the trial courts may go either way [in granting or denying the motion].").

We review for abuse of discretion the district court's decision to grant a Rule 41(a)(2) motion. See Puerto Rico Maritime, 668 F.2d at 49; Alamance, 291 F.2d at 146. "[A]n abuse of discretion is found only where the defendant would suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." Grover, 33 F.3d at 718 (quoting Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 217 (1947)).

In its order granting Doe's motion, the district court first referenced the four factors enumerated in Pace. The court

-8-

began by stating that Urohealth was "probably home on three" of the Pace factors.[2]  By the time Doe filed his motion to dismiss, Urohealth had invested considerable resources, financial and otherwise, in defending Doe's federal action.  Urohealth had produced numerous documents and deposed several of Doe's purported experts.  And, Urohealth had to file several protective orders because of Doe's dilatory discovery tactics.[3]  Doe also was less than diligent in his prosecution of this case.  As Urohealth notes in its brief, Doe "conducted no discovery, [and did nothing] to advance his case for that matter, from October 8, 1997 to August 27, 1998."  The district court twice reprimanded Doe for his failure to meet discovery deadlines and for his discovery abuses.  Finally, Urohealth had filed a motion for summary judgment, which was pending when the court dismissed the action.

---

[2]We agree with the district court's initial assessment of the Pace factors, notwithstanding its less specific comments later in its opinion.

[3]The district court suggested that because the discovery from the federal case would apply in the state case, the fact that Urohealth had considerable discovery expenditures did not weigh against granting Doe's motion.  We disagree.  Much of Urohealth's effort and expense, such as its efforts to respond to Doe's dilatory and sometimes abusive discovery practices and to weed through Doe's experts, will not benefit it in the state case because those issues will not resurface there.

The district court then indicated that, even though the Pace factors favored Urohealth, it did not believe that Urohealth would "truly suffer legal prejudice" if it dismissed the federal lawsuit without prejudice because Urohealth still would have to litigate these claims on behalf of Dacomed in the state suit. Urohealth argued that if the district court denied Doe's Rule 41(a)(2) motion and granted Urohealth summary judgment, the judgment would have preclusive effect for both Urohealth and Dacomed; thus, Urohealth could avoid relitigating the case in state court. The district court disagreed, reasoning that even if summary judgment would preclude relitigation for Urohealth in the state case, Dacomed, which "is a separate entity, albeit wholly owned by Urohealth," would not be protected by res judicata because it was not a defendant in the federal case.

We think the district court erred in its assumption that Dacomed would not be entitled to assert a res judicata defense if Urohealth had garnered judgment in the federal action. An evaluation of the res judicata effects normally would not be part of the Rule 41(a)(2) analysis, but this case is unusual because of the relationship of the two entities. To the extent the district court permissibly considered the potential prejudice stemming from Urohealth's having to litigate on behalf

of Dacomed in the state case,[4] we find an abuse of discretion because the court erred in finding no privity between the companies.

As a general matter, res judicata bars "parties to an original action and those in privity with such parties" from relitigating "all the issues that were tried or might have been tried in the original suit." Providence Teachers Union v. McGovern, 319 A.2d 358, 361 (R.I. 1974).[5] Because there is little doubt that judgment for Urohealth in the federal suit would have had preclusive effect with regard to Doe's claims against Urohealth in the state case, see Eigabri v. Lekas, 681

_____

[4]We do not decide today whether it was proper for the district court to consider in its Rule 41(a)(2) determination the effect dismissal without prejudice for Urohealth in the federal case would have on Dacomed in the state case. Because we conclude that the district court's conclusion about whether Dacomed could use res judicata as a defense in the state case was erroneous, we simply will assume without deciding that the district court properly considered the effects on Dacomed.

[5]As a general rule, "[f]ederal law determines the effects under the rules of res judicata of a judgment of a federal court." 2 Restatement (Second) of Judgments § 87. Some courts have held that the federal law of preclusion should incorporate state law with respect to questions of privity--the central issue here. See, e.g., Lowell Staats Mining Co. v. Philadelphia Elec. Co., 878 F.2d 1271, 1274 (10th Cir. 1989); see also, e.g., 2 Restatement, supra, §87 cmt. b; 18 Charles Alan Wright et al., Federal Practice & Procedure § 4472, at 737-78 & n.37.5 (1981 & Supp. 2000). We need not decide this question, as we are confident that the privity analysis here would be the same whether governed by state or federal law.

-11-

A.2d 271, 280 (R.I. 1996), the appropriateness of the dismissal turns on whether Dacomed and Urohealth are in privity.

We believe that Urohealth and Dacomed are in privity for several reasons. "Under the concept of privity, a non-party may be bound by a prior judgment if that party substantially controlled or [is] represented by a party to the original action." Commercial Union Ins. Co. v. Pelchat, 727 A.2d 676, 680 (R.I. 1999). Someone in privity with a party may also claim the preclusive benefit of the prior action. See, e.g., Pan Am. Match Inc. v. Sears, Roebuck & Co., 454 F.2d 871, 874 (1st Cir. 1972). In this case, the parent and subsidiary are in privity because Urohealth always has taken legal responsibility for the product and Dacomed's actions and stands ready to defend Dacomed in the state case. Moreover, in determining whether two parties are in privity, courts often look to the commonality of their interest in the matter. See Commercial Union Ins., 727 A.2d at 680. In this case, Urohealth's and Dacomed's interests are identical. See Aunyx Corp. v. Cannon U.S.A., Inc., 978 F.2d 3, 7 (1st Cir. 1992) ("The identity of parties requirement was also satisfied, even though ABM was not a party to the [prior] proceedings. [ABM's sister company] had adequate interest in litigating ABM's interests before the [prior court]."); cf. id.

at 7-8 (noting that companies who had represented themselves as alter egos are in privity).

A further factor supporting determination of privity here is that the companies are parent and wholly owned subsidiary. This factor has been stressed in a number of cases, including a decision of our own addressed to Rhode Island Law. See, e.g., Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 298 (1917); Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982); Pan Am. Match, 454 F.2d at 874; Capraro v. Tilcon Gammino, Inc., 751 F.2d 56, 57 (1st Cir. 1985) (Rhode Island law). We do not suggest that the parent-subsidiary relationship automatically establishes privity, but given the relationship of the companies in this case coupled with their joint involvement with the product in question, we have little doubt that a Rhode Island court would treat a merits judgment in favor of Urohealth as resolving an identical claim against its wholly owned subsidiary.

Accordingly, we disagree with the district court's legal conclusion that the lawsuit against the subsidiary could be maintained in state court if the motion for summary judgment were granted in favor of the parent on the merits. We, in some measure, are making a prediction because we do not know how a Rhode Island court would review the matter. An assessment of

-13-

the legal rules that would be applied by a Rhode Island court, however, presents a clear-cut legal issue on which no special deference is due to the district court.  See Salve Regina College v. Russell, 499 U.S. 225, 238-39 (1991).

Because the district court's main stated reason for dismissing without prejudice was based on a legal error, the matter must be remanded for further proceedings.  This result does not necessarily preclude the possibility that for some other reason the district court could dismiss the case without ruling on the summary judgment motion, but given the record, it is somewhat difficult to discern what that reason might be.  As matters now stand, the defendant has made a significant investment of time and money in the case, a motion for summary judgment apparently is ripe for decision, and judgment in favor of Urohealth would avoid what may be otherwise years of litigation in state court against its subsidiary on an identical claim.

While the reason given by the district court is inadequate, it is far from clear from the case law what reason adequately would justify dismissal at the present stage. Although the courts talk about "legal prejudice," the governing Federal Rule of Civil Procedure lays down no specific test, see Fed. R. Civ. P.  41(a)(2), and the precedents could be read as

saying that everything depends on the particular circumstances and that a range of factors could be taken into account. <u>See generally</u> 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2364, at 290-96 (2d ed. 1995). One can imagine a situation in which even though the plaintiff chose to bring the case in federal court, peculiarities such as very difficult issues of state law, for example, might make resolution in the state court more appropriate, at least to the extent of permitting the plaintiff voluntarily to dismiss its federal case and pursue a state remedy. <u>Cf.</u> <u>Kern</u>, 738 F.2d at 971. We do not say that this is such a case, but merely offer that as an illustrative example.

At the same time, it is very difficult to imagine in the circumstances of this case a no-prejudice dismissal at plaintiff's behest that would not involve payment by the plaintiff of the defendant's attorney's fees and other expenses of litigation in federal court to date. We do not suggest that payment of attorney's fees and costs automatically would justify a dismissal. But if there were <u>other</u> valid justifications for dismissal, payment of attorney's fees and other expenses might in some measure ameliorate the prejudice to the defendants of the plaintiff's abortive federal court litigation.

On remand, the plaintiff is free to offer any other reasons it may have to justify a voluntarily dismissal, assuming it wishes to pursue its motion.  We appreciate that any decision by the district court on such motion, if unaffected by error on a matter of law, is entitled to considerable deference.  We do think that a plaintiff cannot conduct a serious product liability claim in a federal court, provoke over a year's worth of discovery and motion practice, allow the case to reach the stage at which the defendant filed a full-scale summary judgment motion, and then when matters seemed to be going badly for plaintiff simply dismiss its case and begin all over again in a state court in what is essentially an identical proceeding.

**III.**

The judgment dismissing the plaintiff's complaint without prejudice is <u>reversed</u> and the matter <u>remanded</u> for further proceedings consistent with this opinion.  **<u>Reversed and remanded.</u>**