DECISION
Before this Court is a motion for summary judgment in a products liability action. Dacomed Corporation (Dacomed), Imagyn Medical Technologies, Inc. (Imagyn) and National Union Fire Insurance Company (National Union), defendants collectively, have jointly moved for summary judgment against Plaintiff Charles Lennon (Plaintiff or Lennon). This Court maintains jurisdiction over the present case pursuant to G.L. 1956 § 8-2-14.
 FACTS AND TRAVEL
On August 6, 1997, Plaintiff commenced an action (Lennon I) against Urohealth Inc.[1] asserting claims of strict liability, negligence and breach of warranty. Plaintiff's claims were based on an allegedly defective penile prosthesis that was surgically implanted by Alan Podis, M.D.. The Lennon I action was brought in United States District Court for the District of Rhode Island (Federal District Court). Dacomed is a wholly owned subsidiary of Imagyn. Dacomed manufactures and markets medical devices specifically including the penile prosthesis device that was implanted in Plaintiff.
Roughly ten months after the commencement of Lennon I, Imagyn motioned for summary judgment alleging Plaintiff did not retain, as required, an expert witness. On December 8, 1998, a Magistrate of the Federal District Court held a hearing on this first summary judgment motion. The Magistrate thereafter instructed Imagyn to move in limine to strike Plaintiff's expert. Plaintiff, on January 26, 1999, filed a second action (Lennon II) in Rhode Island Superior Court primarily alleging the same pertinent facts found in Lennon I. Plaintiff filed Lennon II after discovery in Lennon I revealed that the true manufacturer of the prosthesis which allegedly caused Plaintiff's damages was in fact Dacomed, the wholly owned subsidiary of Imagyn. National Union was later included as a party Defendant after two of their policy holders, namely Imagyn and Dacomed, filed for Chapter 11 bankruptcy protection in May of 1999. The operating surgeon, Dr. Podis, and Miriam Hospital, although not part of the within motion, are also named as Defendants in Lennon II. Therefore, the primary difference between Lennon I and II is the addition of named defendants, as well as a change in venue from Federal to State Court.
Discovery in Lennon I revealed that Plaintiff was at a crossroads in this litigation. On February 15, 1999, Plaintiff motioned to voluntarily dismiss the Lennon I action after discovering no claim could be proven against Imagyn. A Judge of the Federal District Court entered judgment pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, thereby granting Plaintiff's motion to dismiss without prejudice. The Federal District Court Judge determined that Imagyn would not "suffer any legal prejudice" if the motion to dismiss were granted because they would still have to defend Dacomed in the Lennon II action. Therefore, the judge was of the opinion that a judgment in favor of Imagyn would not have any preclusive effect for res judicata purposes in Lennon II. At the time of the decision of the Federal District Court Judge, Imagyn's initial motion for summary judgment was still pending. The decision was appealed to the United States First Circuit Court of Appeals (First Circuit), which reversed and remanded the decision. See Doe v. Urohealth Systems, Inc.,216 F.3d 157 (1st Cir. 2000). The First Circuit found that the Federal District Court erred in finding no privity between Imagyn and Dacomed.Id. The First Circuit stated, "[i]n this case, the parent and subsidiary are in privity because Urohealth always has taken legal responsibility for the product and Dacomeds actions and stands ready to defend Dacomed in the state case." Id.
On remand, Lennon I was assigned to another Federal District Court Judge. Plaintiff then renewed the motion to voluntarily dismiss Lennon I. A hearing was held on this motion on November 2, 2000 and a stay was ordered pending resolution of Lennon II. This decision was also appealed to the First Circuit Court of Appeals. See In re Urohealth Systems,Inc., 252 F.3d 504 (1st Cir. 2001). On June 12, 2001, the First Circuit vacated the stay order and ordered Plaintiff's renewed motion to dismiss be denied. This second opinion by the First Circuit is predicated on the potential prejudice that would flow to Imagyn in the event their pending motion for summary judgment would not be entertained. Id. In other words, at this stage of the proceeding it was only equitable to hear Imagyn's motion since they had expended many resources defending Lennon I. On January 10, 2002, however, the parties stipulated to dismiss the Lennon I action with prejudice.
While these procedural irregularities were developing in Federal Court, Defendants brought a motion for summary judgment in the State Court Lennon II action. Defendants relied on the prior pending action doctrine while arguing at a hearing before a State Court Judge on October 3, 2000. The transcript of this hearing reveals that the judge could not determine, as a matter of law under the standard of civil procedure Rule 56, that the federal action definitely had preclusive effect as of that stage of the proceeding. At the hearing, the judge stated, "[a]t this point, there's not preclusive effect. There's a potential preclusive effect. There's a motion for voluntary dismissal pending. I'm just not going to grant the motion. I can't say as a matter of law potentially preclusive effect entitles the defendant to relief in this Court." (Tr. at 9). Ultimately, the State Court Judge denied Defendants' motion for summary judgment. Subsequently, Defendants renewed their motion for summary judgment which is currently before this Court.
 STANDARD OF REVIEW
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297
(R.I. 1980)); Super. Civ. P. Rule 56(c). The Court must examine all evidence in the light most favorable to the nonmoving party and must refrain from weighing the evidence. Cassador v. First National Stores,Inc., 478 A.2d 191 (R.I. 1984). A litigant who opposes a motion for summary judgment must affirmatively establish the existence of a material fact and cannot rest upon "mere conclusions, or mere legal opinions."Senn v. MacDougall, 639 A.2d 494,95 (R.I. 1994); see also Paradis v.Zarrella, 683 A.2d 1337 (R.I. 1996). The Court's purpose during the summary judgment procedure is issue finding, not issue determination.Industrial National Bank v. Peloso, 397 A.2d 1312, 1313 (R.I. 1979) (citing O'Connor v. McKanna, 359 A.2d 350 (R.I. 1976); Slefkin v.Tarkomian, 238 A.2d 742 (R.I. 1968)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Id. (citing RhodeIsland Hospital Trust National Bank v. Boiteau, 376 A.2d 323 (R.I. 1977)).
"When an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Id. (citing Rhode Island HospitalTrust National Bank v. Boiteau, supra; O'Connor v. McKanna, supra.) "[T]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise they have an affirmative duty to set forth specific fact showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co., 705 A.2d 969
(R.I. 1998) (citing St. Paul Fire Marine Insurance Co. v. RussoBrothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994); Super. Civ. P. Rule 56(e)). The remedy of summary judgment "is a drastic remedy and should be cautiously applied." Boland v. Town of Tiverton, 670 A.2d 1245, 1248 (R.I. 1996) (quoting Ardente v. Horan, 117 R.I. 254, 256-57, 366 A.2d 162, 164 (1976)).
 SUMMARY JUDGMENT MOTION
A. RES JUDICATA
The doctrine of res judicata "makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action . . . ." ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996) (citing Rhode Island Student Loan Authority v. Nels.Inc., 600 A.2d 717, 720 (R.I. 1991); Coates v. Coleman, 72 R.I. 304, 312-13, 51 A.2d 81, 85 (1947); Matteodo v. Pesce, 68 R.I. 188, 27 A.2d 109
(R.I. 1942)). Essentially, a second action will be barred if there exists an identity of parties, identity of issues, and a final judgment on the merits. Id. (citing Gaudreau v. Blasbalg, 618 A.2d 1272, 1275 (R.I. 1993)).
Res judicata is also known as "claim preclusion." See Cunningham v.Sperling, 9 F.3d 2, 3 (1st Cir. 1993). A dismissal "with prejudice" in a prior action "constitutes a full adjudication of the merits as if the order had been entered subsequent to trial." School Committee of the Townof North Providence v. North Providence Federation of Teachers, Local 920— American Federation of Teachers, AFL-CIO, 122 R.I. 105, 109,404 A.2d 493, 495 (R.I. 1979). Some authorities have abandoned the phrase "adjudication on the merits" due to "its possibly misleading connotations." 1 Restatement (Second) Judgments § 19, Comment a (1982). The doctrine of res judicata is designed to provide certainty to judicial proceedings, prevent the depletion of legal resources and also avoid subjecting parties to repetitious litigation. See generallyParkland Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).
An examination of the events that transpired in Lennon I, leading up to the eventual dismissal with prejudice of Plaintiff's action, is necessary to determine the applicability of Defendants' preclusion arguments. InBaris v. Sulpicio Lines, Inc., 74 F.3d 567, 570 (5th Cir. 1996), the Court discussed the principles behind the doctrine of res judicata and observed that it "acts as a bar to a subsequent suit when the resolution of the initial proceeding has been `on the merits,' which suggests that the substantive claims have been addressed by the court." The record in the present case indicates that the underlying substantive issues concerning the potential liability of Defendants were never actually litigated due to the rather unusual procedural history of Lennon I. The unique posture of this case warrants that this Court pay close attention to the atypical facts.
For purposes of Defendants' argument concerning the doctrine of resjudicata, the First Circuit Court of Appeals stated that they had little doubt "that a Rhode Island court would treat a merits judgment in favor of Urohealth as resolving an identical claim against its wholly owned subsidiary." Also, the First Circuit disagreed with the "district court's legal conclusion that the lawsuit against the subsidiary could be maintained in state court if the motion for summary judgment were granted in favor of the parent on the merits." However, in the same breath, the First Circuit also observed that they were making a prediction as to how a Rhode Island court would rule on this issue. From this, it is quite clear that the First Circuit found Imagyn and Dacomed to be parties in privity for purposes of res judicata.
This Court agrees with the privity analysis of the First Circuit; however, this isolated factor is not dispositive of this matter. In this regard, it is critical to understand that summary judgment was never entered in Lennon I despite the fact that the record indicates a dismissal with prejudice. Imagyn is the parent corporation of Dacomed, and both entities, therefore, have identical interests in the outcome of this litigation. Imagyn has admitted "alter ego" status and also has acknowledged its financial responsibility for any potential liability on the part of Dacomed. On its face, the three aforementioned elements of the res judicata doctrine appear to be satisfied in this case. However, a deeper analysis is necessary to ensure a fair disposition and account for the unique characteristics of this case.
In this regard, the First Circuit stated that it would be "difficult,but not impossible," for the District Court to dismiss the case without ruling on the summary judgment motion. Ironically, Imagyn's pending summary judgment motion in Lennon I, after the second remand to the Federal District Court, remained undecided. Thereafter, Plaintiff and Defendant Imagyn stipulated to a dismissal with prejudice after the second First Circuit remand but before Imagyn's summary judgment motion was actually litigated or decided. (Emphasis added).
"[T]he doctrine of res judicata [should] be applied to those matters actually litigated between parties . . . ." ElGabri, 681 A.2d at 276. Thus, the substantive issues were never reached in that Lennon I was disposed of by agreement of both parties. This Court finds this fact to be one of those small atypical possibilities the First Circuit alluded to when it remanded the Lennon I action and opined that it would be hard to dismiss the case without actually deciding the summary judgment motion. Nevertheless, the Lennon I action was disposed of and Imagyn's summary judgment motion was never finalized. This Court has carefully reviewed all of the transcripts in the Federal Court proceedings and fails to find any evidence that the substantive issues of this action were, in fact, even argued and resolved. This Court must emphasize this point as it is crucial to a proper adjudication of the instant motion.
The United States Supreme Court recently reversed a Maryland State Court decision that applied the doctrine of res judicata and gave preclusive effect to a Federal Court dismissal based on the statute of limitations. Semtek International Incorporated v. Lockheed MartinCorporation, 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). InLockheed Martin, the plaintiff filed various contract and business torts against the defendant, and the District Court for the Central District of California, sitting in diversity, dismissed the action after finding that the claims were barred by California's two-year statute of limitations.Id. The California Federal District Court dismissed the claims, "in their entirety on the merits and with prejudice." Id. at 499.
Before the Federal Court dismissal, plaintiff also filed suit in Maryland State Court alleging the same causes of action. Id. The State Circuit Court for Baltimore City, Maryland, granted the defendant's motion to dismiss based on the doctrine of res judicata. Id. The United States Supreme Court granted certiorari and reversed the State Court dismissal after observing that "on the merits" judgments are not always entitled to claim-preclusive effect. Id. at 501. There, the Supreme Court determined that the Federal Court dismissal with prejudice only barred the refiling of the same claim in the same Federal Court and "[t]hat is undoubtedly a necessary condition, but it is not a sufficient one, for claim-preclusive effect in other courts." Id. at 506.
Speaking on behalf of the Lockheed Martin court, Justice Scalia noted that "[t]he original connotation of an `on the merits' adjudication is one that actually `passes directly on the substance of a particular claim' before the court." Id. (quoting Restatement (Second) of Judgments
§ 19, Comment a, p. 161 (1980)). In a parenthetical, Justice Scalia also noted that "`[t]he prototypical judgment on the merits is one in which the merits of a party's claim are in fact adjudicated for or against the party after the trial of the substantive issues.'" Id. TheLockheed Martin court remarked that the phrase "judgment on the merits" has changed over the years and "has come to be applied to some judgments that do not pass upon the substantive merits of a claim and hence donot (in many jurisdictions) entail claim-preclusive effect." Id. (citing R. Marcus, M. Redish, E. Sherman, Civil Procedure: A ModernApproach 1140-41 (3d ed. 2000)). "In short, it is no longer true that a judgment `on the merits' is necessarily a judgment entitled to claim-preclusive effect . . . . " Id. at 503.
The facts and procedural history of the present case are similar to those of the Lockheed Martin case. In this case, Lennon I was dismissed with prejudice, after stipulation, by the Federal District Court. Further, Rhode Island law is clear in that a "dismissal with prejudice" operates as an "adjudication on the merits." See supra North ProvidenceFederation of Teachers, Local 920 — American Federation ofTeachers, AFL-CIO, 404 A.2d 495. Defendants now move, in the present State Court action, to dismiss Plaintiff's claims through application of the doctrine of res judicata. Thus, both the present case and LockheedMartin concern the prospective res judicata application of a prior federal court judgment in subsequent state court litigation.
This Court finds, in accord with Lockheed Martin, that it is problematic that at no time during the proceedings in Lennon I were any substantive issues regarding liability ever adjudicated. See also Kochv. Rodlin Enterprises, 273 Cal.Rptr. 438, 441 (Cal. Ct. App. 1990) (res judicata will not bar a second action after the first action is dismissed by a statute of limitations because this termination is "technical or procedural, rather than substantive."); Sellan v. Kuhlman, 261 F.3d 303, 311 (2nd Cir. 2001) (noting that the meaning of the term "adjudication on the merits" is clear in that it refers to "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."); Johnson v. City of Loma Linda, 5 P.3d 874, 884 (Cal. 2000) (noting that "[a] judgment is on the merits for purposes of res judicata `if the substance of the claim is tried and determined . . . . '") (citing 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 313, p. 864). This is true even though the Lennon I action is considered an "adjudication on the merits." Thus, this Court finds that claim-preclusive effect, as it relates to the potential liability of Dacomed, should not be afforded the dismissal by the Federal Court. The record in the Lennon I action is silent with respect to the issue of liability. The unique procedural history of this case as well as the agreement regarding the stipulation to dismiss precluded such an examination of such liability.
It should also be noted that there was only one named Defendant (Imagyn) in the Lennon I action. However, the instant action is directed towards Dacomed, which is the separate and distinct subsidiary of Imagyn. The moving parties to this motion ask that this Court view them as one single entity so that they can take advantage of the doctrine ofres judicata. Our Supreme Court held, in Miller v. Dixon Industries,513 A.2d 597 (R.I. 1986), that the rule is to observe separate corporate identities. "Absent proof that a parent company dominated the finances, policies, and practices of its subsidiary, courts will generally respect the independent character of each corporation." Parrillo v. Giroux,426 A.2d 1313 (R.I. 1981); see also Lily Truck Leasing Corp. v. Clark,556 A.2d 565, 567 (R.I. 1989). Generally speaking, a parent corporation that is allegedly liable for the torts of its subsidiary will seek to separate itself from such an agency relationship. However, the entities in this case are seeking to do just the opposite in order to take advantage of the doctrine of res judicata. This Court finds that Imagyn and Dacomed, although they qualify as a parent and subsidiary, are better viewed as distinct and independent corporations based upon their historical relationship and prior dealings.
Although Imagyn and Dacomed are in privity with one another because of their commonality of interests, they remain distinct separate entities. In Lennon I, Plaintiff asserted a direct claim against the parent corporation, Imagyn, which was the only named defendant in that action. In the present action, Plaintiff has asserted direct claims only against the subsidiary corporation, namely Dacomed. Further, the only claims asserted against the parent in Lennon II concern those allegations of vicarious liability. Therefore, this Court finds that Dacomed, as the subsidiary, cannot claim the benefit of preclusion in this action because its potential liability is not derivative. See Pridemore v. Napolitano,689 A.2d 1053, 1056 (R.I. 1997); see also Porterfield v. Gilmer,208 S.E.2d 295, 297 (Ga. App. 1974). The Napolitano court observed "that a release of the servant or agent from liability for tortuous conduct would serve to release the master or principal whose liability was only derivative, but not to extend to the tortfeasor any special immunity enjoyed by the master or principal." 689 A.2d at 1056. In Gilmer, the Court held that a servant could not employ the doctrine of res judicata
even though his master had previously received a judgment which exonerated him in terms of liability. 208 S.E.2d at 297. There, the Court found that the servant's potential liability to a third party was not derivative and instead direct. Id. As such, the servant could not employ the doctrine of res judicata as a shield against alleged direct liability. Id.
In this regard, it is important to distinguish between the allegedly directly liable and derivatively liable tortfeasors. It would be logical to apply the doctrine of res judicata to those tortfeasors alleged to be derivatively liable when a "final adjudication on the merits" has been reached against the party who is said to be directly liable. This is true because a party cannot be found derivatively liable unless some other party is first found to be directly liable. In other words, there is a prerequisite that some party first be found directly liable before a second party may be found derivatively liable. The converse, however, is not logical because it would be inappropriate to permit an alleged direct tortfeasor to claim the benefit of preclusion once the potential derivatively liable tortfeasor is found innocent. This is exactly what Dacomed seeks to do in the present case. This Court finds that Dacomed, as the party said to be directly liable to Plaintiff, cannot rely on the preclusion principles flowing from the doctrine of res judicata because the Lennon I action only dismissed claims which were asserted against Imagyn, which is said to only be derivatively liable in this action.
This Court also finds persuasive that the stipulation entered into in Lennon I is akin to a consent judgment since both parties agreed that it was appropriate. See 18A Wright Miller, Federal Practice andProcedure: Civil § 4443 at 252 (2002). Speaking as to a judgment by consent, 1 Restatement (Second) Judgments § 51(f) at 54 (1982) states that, "[i]t is therefore appropriate to regard the claim against the primary obligor and the person vicariously responsible for his conduct as separate claims when one of them has been settled." Therefore, Plaintiff should be able to pursue his claim directly against Dacomed as the primary Defendant because the corporations involved are separate and distinct entities.
B. COLLATERAL ESTOPPEL
Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Statev. Chase, 588 A.2d 120, 122 (R.I. 1991) (quoting Ashe v. Swenson,397 U.S. 436, 443, 25 L.Ed.2d 469, 90 S.Ct. 1189 (1970)). "[T]he requirements are (1) that there be an identity of issues, (2) that the prior proceeding resulted in a final judgment on the merits, and (3) that the party against whom collateral estoppel is asserted be the same as or in privity with a party in the prior proceeding." E.W. Audet Sons,Inc. v. Firemen's Fund Insurance Company of Newark, 635 A.2d 1181, 1186 (R.I. 1994) (citing Chase, 588 A.2d at 122) (citing Providence TeachersUnion, Local 958 — American Federation of Teachers, AFL-CIO v.McGovern, 113 R.I. 169, 172, 319 A.2d 358, 361 (R.I. 1974)). The first element, identity of issues, has been further broken down "into three factors: (1) the issue sought to be precluded must be identical to the issue determined in the earlier proceeding, (2) the issue must actuallyhave been litigated in the prior proceeding, and (3) the issue must necessarily been decided." Firemen's Fund Insurance Company of Newark,
635 A.2d at 1186 (citing Chase, 588 A.2d at 122) (citing Lucido v.Superior Court, 51 Cal.3d 335, 341, 795 P.2d 1223, 1225, 272 Cal.Rptr. 767, 769 (1990) (emphasis added)). Collateral estoppel is also known as "issue preclusion." See Sperling, 9 F.3d at 2.
This Court believes that the dispositive issue is whether or not the merits of the case were "actually litigated." For collateral estoppel purposes, it is again necessary to examine the issue of liability as it transpired in Lennon I. The current record is devoid of the reasoning and decision of the Federal District Court Judge in his order denying Plaintiff's motion to dismiss. According to the documents before this Court, the issue of liability was never addressed in the Federal District Court and therefore, Defendants' may not utilize the doctrine of collateral estoppel. The second element necessary to find an identity of issues is not evident in the case at hand. In other words, the requirement that the issues be "actually litigated" is not satisfied. "[N]or is it actually litigated if it is the subject of a stipulation between the parties." See 1 Restatement (Second) Judgments § 27(e) at 256 (1982). Here, the parties stipulated to the dismissal with prejudice in Lennon I. No adjudication of the issues was ever reached due to the unique procedural posture. No facts were actually resolved in Lennon I so as to preclude the determination of any issues in the present action.Id. at § 27. This Court finds that the doctrine of collateral estoppel is not applicable in the present case because all of the necessary elements have not been satisfied, namely, actual litigation of the issue sought to be precluded.
 CONCLUSION
As to the present summary judgment motion, the moving party has offered the affidavit of its legal counsel illustrating that Dacomed is merely a wholly owned subsidiary of Imagyn. The non-moving party has responded by providing SEC filings of Imagyn and Dacomed showing their separate existence. Specifically, the SEC report filed by Imagyn states that it is simply a "holding company with no material tangible assets or operations other than its investments in its subsidiaries." Plaintiff has further produced a product registration card for the prosthesis device implanted in Plaintiff bearing only the name of Dacomed as the manufacturer. Plaintiff has also offered, as evidence, the consolidated balance sheet of Imagyn for the periods 1996, 1997 and 1998. These documents reveal that Imagyn had zero net sales, zero costs of sales, and zero gross profit during this time period. Additionally, the documents state that Imagyn held no property, equipment, patents or intangibles. For purposes of a summary judgment motion, these facts highlight a material dispute as to the true relationship and level of control between the parent and subsidiary.
This raises doubt as to what level of domination Imagyn could have possibly exerted over Dacomed with respect to its finances, policies and practices. The SEC filings of Imagyn further reveal that Dacomed is involved in approximately five products liability lawsuits which will be defended at the direction of the insurance carrier of Dacomed. This Court is of the opinion that Imagyn is distancing itself from Dacomed when it files statements with the SEC that its subsidiary will defend itself. For purposes of the present action, however, Imagyn claims that it is one in the same with Dacomed. As the old saying goes, Imagyn cannot "have its cake and eat it too." This Court finds that this evidence proves an issue of material fact is in dispute concerning the level of corporate control and separate legal existence between Imagyn and Dacomed.
Imagyn and Dacomed, as corporations, retained their status as separate entities. Thus, this Court finds that only Defendant Imagyn may claim the benefit of the preclusion principles substantively found in the doctrine of res judicata. This is due to the nature of Plaintiff's derivative argument concerning the alleged vicarious liability of Imagyn. Lennon I asserted claims of direct liability against Imagyn and was ultimately dismissed with prejudice by the Federal District Court. This, however, has no bearing on the instant action which asserts claims of direct liability only against Dacomed.
Therefore, a direct claim still lies against Dacomed as the alleged primary obligor. The ruling in Lennon I was obtained by Defendant Imagyn, which, by admission of Plaintiff, is at most vicariously liable. Therefore, this Court finds that the primary party in interest (Dacomed) may not benefit from preclusion under the unusual circumstances of this case. This Court further finds that the purpose behind the doctrine ofres judicata does not lend itself to the facts of this case. Thus, the motion for summary judgment is therefore granted as it pertains to Defendant Imagyn only and denied as it pertains to Defendants Dacomed and National Union.
Counsel shall submit the appropriate order for entry.
[1] Urohealth Inc. changed its corporate name to Imagyn Medical Technologies, Inc. in 1997. Although these two names can be viewed as interchangeable, Imagyn will hereinafter be referenced.