Charles LENNON

v.

DACOMED CORPORATION
and National Union
Fire Insurance.

No. 2004–292–Appeal.

Supreme Court of Rhode Island.

June 23, 2006.

Albert R. Romano, Esq., Jules J. D'Alessandro, Esq., Christine M. Fraser, Esq., Providence, for Plaintiff.

Brooks R. Magratten, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

After being implanted with a Dura–II penile prosthesis, the plaintiff, Charles Lennon (Lennon or plaintiff), complained about problems keeping the prosthesis in a concealed position.[1] The plaintiff sued the defendant-manufacturer, Dacomed Corporation (defendant or Dacomed) and its insurer, National Union Fire Insurance (National Union),[2] alleging strict liability, negligence, failure to warn, breach of express and implied warranties, and *res ipsa loquitur.*

1. The plaintiff also complained about discomfort and noise.

2. The plaintiff initially filed suit against several defendants. However, this appeal involves only Dacomed and National Union as parties or would-be parties. National Union was added to the suit under G.L.1956 § 27–7–2.4 which permits an injured party to substitute a tortfeasor's liability insurer as a named defendant after the tortfeasor files for bankruptcy.

A jury returned a verdict of $750,000 for plaintiff. The defendants moved for a new trial, and, alternatively, to modify the judgment. The trial justice denied their motion for a new trial, but granted a remittitur; he directed plaintiff to elect either a modified judgment of $400,000 or face a new trial on damages. The plaintiff rejected the modified judgment; consequently, the trial justice ordered a new trial on damages.

The parties have cross-appealed. The plaintiff appeals from the order granting a new trial on damages based upon his rejection of the remittitur. The defendants appeal the denial of their motions for a new trial and judgment as a matter of law. For the reasons contained herein, we conclude that plaintiff's claims against defendant Dacomed are barred by *res judicata*, and, accordingly, we vacate the jury award.

### Facts of the Case

In 1995, after a long battle with impotence, employing less invasive procedures,[3] plaintiff decided to explore the possibility of surgical implantation of a penile prosthesis. The plaintiff first consulted with Jacques Susset, M.D., a urologist, about the different types of penile prosthesis, which included rigid, semirigid, and inflatable. The plaintiff initially indicated that he preferred an inflatable model because it could be concealed easily. The plaintiff also sought the advice of Alan Podis, M.D. (Dr. Podis), about the implantation of a penile prosthesis. Similarly, Dr. Podis discussed the different kinds of implants. However, according to plaintiff, Dr. Podis suggested the Dacomed Dura–II brand semirigid prosthesis (Dura–II) because it was easy to conceal, would require less

surgery, and involved a reduced risk of infection.

Doctor Podis implanted plaintiff with the Dura–II on February 23, 1996, at the Miriam Hospital. After the implantation, plaintiff complained of discomfort and became worried that the prosthesis was not functioning properly because it would not remain in the down position and because he experienced a great deal of pain during intercourse. The plaintiff brought these problems to the attention of Dr. Podis during follow-up visits. He also discussed these concerns with other doctors and a Dacomed representative.

The plaintiff maintained that these problems continued to persist and markedly affected his quality of life. Specifically, he complained of significant psychological distress caused by embarrassment associated with the inability to keep the prosthesis in the down position. He contends that although he is a very sociable person he stays home about 80 percent of the time. He also contends that he is not able to interact with his grandchildren as he would like because he is afraid he "might stick them with [the] device."

Although the prosthesis can be surgically removed, plaintiff contends that surgery is not a viable option because of his poor health. According to plaintiff, he has twice undergone open heart surgery, had his gall bladder removed, and had two operations on carotid arteries. The plaintiff testified that during his most recent carotid surgery he experienced blood pressure complications. The plaintiff maintains that as a result he is afraid to undergo "any surgery unless [the condition is] life threatening" and thus, he must suffer with the Dura–II for the rest of his life.

---

**3.** According to plaintiff, his treatments included herbal therapy, vacuum pump, and an injection.

## Travel of the Case

The travel of this case is tortured and complex. The plaintiff originally filed suit (*Lennon I*) in the United Stated States District Court for the District of Rhode Island against Urohealth Systems, Inc. (Urohealth), Dacomed's parent corporation, alleging negligence, breach of warranty, strict liability, failure to warn and *res ipsa loquitur.*[4] A contentious discovery process proceeded for sixteen months, during which time the District Court admonished plaintiff with respect to numerous abuses of the discovery process. At the scheduled close of discovery, plaintiff had not yet retained an expert witness. Consequently, Urohealth moved for summary judgment on June 23, 1998. The District Court extended the pretrial deadlines, allowing plaintiff additional time to retain an expert. The plaintiff complied and Urohealth eventually resubmitted its motion for summary judgment and moved to challenge the qualifications of plaintiff's expert.

Meanwhile, on January 26, 1999, plaintiff sued Dacomed and Urohealth,[5] in the Superior Court of Rhode Island (*Lennon II*). The plaintiff asserted the same product liability claims that comprised the federal court suit (*Lennon I*). According to plaintiff, *Lennon II* was filed after discovery in *Lennon I* revealed that Dacomed, not Urohealth, had, in fact, manufactured plaintiff's allegedly defective prosthesis. The plaintiff also added National Union Fire Insurance as a defendant in *Lennon II* after Dacomed and Urohealth, its poli-

cyholders, filed for Chapter 11 bankruptcy protection. Doctor Podis and the Miriam Hospital also were named as defendants in *Lennon II*, but this appeal does not involve either of those parties.[6]

On February 15, 1999, plaintiff moved to dismiss *Lennon I* from the federal District Court without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure. Urohealth opposed the motion, arguing that if the motion were granted, Urohealth would suffer legal prejudice by having to relitigate the same case in state court after having already expended significant resources in federal court. Further, Urohealth contended that if summary judgment were granted in its favor, the judgment would have preclusive effect as to both Dacomed and Urohealth in the state court action.

The District Court disagreed with Urohealth. The court reasoned that even if summary judgment would preclude relitigation for Urohealth in *Lennon II*, Dacomed would not similarly be protected by the doctrines of *res judicata* and collateral estoppel because Urohealth and Dacomed were not in privity and Dacomed was not a defendant in *Lennon I*. Consequently, the District Court granted plaintiff's motion to dismiss without prejudice.

Urohealth sought review of the District Court's decision, and the United States Court of Appeals for the First Circuit reversed, concluding that the District Court

---

4.  Urohealth had acquired Dacomed as a wholly owned subsidiary in 1995 and, after the acquisition, was responsible for the manufacture and sale of the Dura–II. At the time *Lennon I* was commenced, it was unclear whether the plaintiff's Dura–II was manufactured before or after Urohealth acquired Dacomed.

5.  In 1997, Urohealth changed its name to Imagyn Medical Technologies, Inc. The Supe-

rior Court complaint named Imagyn as a defendant. For the sake of simplicity, however, we shall continue to refer to this company as Urohealth.

6.  The Miriam Hospital was dismissed from the case before trial by stipulation of the parties and judgment as a matter of law was entered for Dr. Podis at the conclusion of plaintiff's case.

erroneously presumed that Dacomed would not be able to assert a *res judicata* defense in *Lennon II*. *Doe v. Urohealth Systems, Inc.*, 216 F.3d 157, 161–63 (1st Cir.2000). The court opined that Dacomed and Urohealth were in privity and that, therefore, the defense of *res judicata* would be available in *Lennon II*. *Id.* at 162. The Court of Appeals also recognized that Urohealth already had made a significant investment of time and money in *Lennon I* and that its motion for summary judgment was ripe for a decision. *Id.* at 163. The First Circuit remanded the case to the District Court.

On remand, the District Court decided to stay further proceedings in *Lennon I* until *Lennon II* had been completed in state court. The District Court concluded that *Lennon II* was a more comprehensive proceeding and that a decision in *Lennon II* could render the issues raised in *Lennon I* moot. Thus, in the interest of judicial economy, the District Court decided to reserve judgment until the completion of *Lennon II* in state court.

Urohealth again petitioned the First Circuit for relief.[7] *In re Urohealth Systems, Inc.*, 252 F.3d 504 (1st Cir.2001). The First Circuit reversed on the ground that the District Court's decision to stay *Lennon I* effectively reinstated the very ruling that the appellate court previously had vacated plaintiff's motion to dismiss without prejudice. *Id.* at 509. Consequently, the Appeals Court vacated the stay order and remanded the case with directions to deny plaintiff's motion to dismiss without prejudice and to hear Urohealth's pending motions, including its motion for summary judgment. *Id.* This did not occur. On remand, rather than press forward in the federal court with *Lennon I*, the parties stipulated to voluntarily dismiss *Lennon I* "with prejudice."

After *Lennon I* was dismissed, defendants Urohealth, Dacomed, and National Union moved for summary judgment in *Lennon II*.[8] According to defendants, plaintiff's claims in *Lennon II* were barred by *res judicata* and collateral estoppel because *Lennon I*, included similar claims and was terminated by a dismissal with prejudice. The motion was granted concerning Urohealth only. The hearing justice found that, although Urohealth and Dacomed were in privity, the preclusive effect of the dismissal with prejudice in *Lennon I* should apply only to Urohealth. The court provided several reasons for its decision: (1) Dacomed was not a party in *Lennon I*; (2) there was not an adjudication of the substantive issues in *Lennon I*; (3) Dacomed and Urohealth were separate and distinct entities; and (4) Urohealth was brought into *Lennon II* on a theory of vicarious liability, whereas Dacomed and National Union were named in *Lennon II* on a theory of primary liability. In consideration of these factors as a whole, the trial justice ruled that only Urohealth was protected by the doctrines of *res judicata* and collateral estoppel.

---

7. Urohealth petitioned the First Circuit for an extraordinary writ under Rule 21(c) of the Federal Rules of Appellate Procedure. However, the Court of Appeals noted that the District Court order was appealable and decided to treat Urohealth's petition as a notice of appeal.

8. This was defendants' second motion for summary judgment in *Lennon II*. The defendants previously had moved for summary judgment in *Lennon II* before *Lennon I* was dismissed. The defendants had argued that the prior pending action doctrine barred plaintiff's product liability claims in *Lennon II*. The motion justice ultimately denied defendants' motion, citing his inability to determine, as a matter of law, whether *Lennon I*, given its then procedural posture, should have any preclusive effect in *Lennon II*.

The parties moved forward with a jury trial and, on March 22, 2004, the jury returned a verdict in favor of plaintiff and awarded $750,000 in damages. After the verdict, the trial justice considered defendants' renewed motion for judgment as a matter of law, motion for a new trial (and, in the alternative, remittitur). The trial justice denied the motion for judgment as a matter of law with respect to all product liability counts, except implied warranty for a particular purpose and denied the motion for a new trial. However, with regard to the remittitur, the trial justice determined that the jury's award of $750,000 shocked the conscience of the court; he modified the judgment to $400,000. If plaintiff rejected the remittitur, the trial justice declared, he would grant a new trial on damages.

In response, plaintiff attempted to conditionally accept the remittitur with a corresponding commitment from defendants that they would not appeal to this Court. The defendants refused the offer, the court rejected a conditional acceptance, and plaintiff rejected the remittitur. Consequently, the trial justice ordered a new trial on damages.

The parties cross-appealed. The plaintiff appeals the grant of a new trial on damages. Specifically, plaintiff contends that the trial justice applied an erroneous rule of law and overlooked or misconceived evidence in granting the remittitur. The defendants appeal the denial of their motion for judgment as a matter of law and

motion for a new trial. The defendants contend that: (1) plaintiff's action is barred by *res judicata* and collateral estoppel; (2) the trial justice erred by permitting a particular expert witness of plaintiff to testify; (3) the trial justice improperly instructed the jury; and (4) plaintiff failed to state any cause of action.

## Analysis

### 1. National Union's Appeal

■ The first issue the Court must address is whether National Union is a proper appellant. The plaintiff contends that National Union is not appropriately before the Court because it did not file a notice of appeal and was not named in Dacomed's notice of appeal. According to plaintiff, the reference in the notice of appeal to "Dacomed Corp., et al" was insufficient as a matter of law to preserve National Union's appellate rights. The plaintiff cites the specificity requirement in Article I, Rule 3(c) of the Supreme Court Rules of Appellate Procedure in support of his argument.

Rule 3(c) provides in relevant part: "The notice of appeal shall specify the party or parties taking the appeal and shall designate the judgment, order or decree or part thereof appealed from." We note that this language is similar to the language of Rule 3(c) of the Federal Rules of Appellate Procedure as it existed before it was amended in February 1994.[9] This Court consistently has looked to the interpretation of comparable federal rules in

---

9. Before it was amended in 1994, Rule 3(c) of the Federal Rules of Appellate Procedure shared similar language with Rule 3(c) of our Supreme Court Rules of Appellate Procedure, stating in relevant part that a notice of appeal "shall specify the party or parties taking the appeal." After the 1994 amendment, the language of Federal Rule 3(c) was expanded and in its most current form states that the notice of appeal must:

"specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as 'all plaintiffs,' 'the defendants,' 'the plaintiffs A, B, et al.,' or 'all defendants except X[.]' " Fed. R.App. P. 3(c)(1)(A).

interpreting our rules of procedure. *See, e.g., Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.,* 891 A.2d 838, 840 (R.I.2006) ("This [C]ourt has stated previously that where the federal rule and our state rule of procedure are substantially similar, we will look to the federal courts for guidance or interpretation of our own rule.") (quoting *Smith v. Johns–Manville Corp.,* 489 A.2d 336, 339 (R.I.1985)). Consequently, we shall seek guidance from the United States Supreme Court's interpretation of Federal Rule 3(c) before its language was changed significantly by amendment.

In *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 314, 318, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the United States Supreme Court construed the language of Federal Rule 3(c) to require that each party to an appeal be named specifically in the notice of appeal. The petitioner in *Torres* was one of sixteen plaintiffs who intervened in an employment discrimination suit against the defendant. The District Court for the Northern District of California dismissed their complaint based on Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. The case was appealed, and the Court of Appeals for the Ninth Circuit reversed the dismissal and remanded the case for further proceedings. *Bonilla v. Oakland Scavenger Co.,* 697 F.2d 1297, 1304 (9th Cir.1982). However, the notice of appeal to the Ninth Circuit had, because of a clerical error, omitted petitioner's name. On remand, defendant moved for and was granted summary judgment against petitioner because petitioner was not named in the notice of appeal. The Ninth Circuit summarily affirmed. *Martinez v. Oakland Scavenger Co.,* 807 F.2d 178 (9th Cir.1986).

Before the United States Supreme Court, the petitioner in *Torres* argued that, although not specifically named in the notice of appeal, the use of the "et al" designation in the original notice of appeal was sufficient to indicate his intention to appeal. The Supreme Court concluded however, that the petitioner "failed to comply with the specificity requirement of Rule 3(c), even liberally construed." *Torres,* 487 U.S. at 317, 108 S.Ct. 2405. The Court noted:

> "The purpose of the specificity requirement of Rule 3(c) is to provide notice both to the opposition and to the court of the identity of the appellant or appellants. The use of the phrase 'et al.,' which literally means 'and others,' utterly fails to provide such notice to either intended recipient." *Torres,* 487 U.S. at 318, 108 S.Ct. 2405.

Justice Marshall, writing for the Court in *Torres,* based the decision on jurisdictional grounds, holding that "the Court of Appeals was correct that it never had jurisdiction over petitioner's appeal." *Id.* at 317, 108 S.Ct. 2405.

As noted, National Union was not named in the notice of appeal and only one filing fee initially was paid to this Court. In preliminary briefings submitted to this Court, plaintiff argued against National Union's appellate participation for failing to perfect an appeal. It was then that defendants moved for an enlargement of time in which to tender the filing fee. We granted that motion, but reserved judgment on the effect, if any, of the failure to have named National Union as an appellant in the case. We shall proceed now to address this issue.

■ We are of the opinion that National Union's appeal is not appropriately before this Court. "All rules of appellate procedure may be characterized as having technical aspects." *Munro v. Kaiser Aluminum & Chemical Corp.,* 423 A.2d 832, 833 (R.I.1980) (concluding that Article I, Rule 10(e) of the Supreme Court Rules of Ap-

pellate Procedure was designed to allow the correction or modification of the record in an appeal that was properly claimed and was not a device for permitting an appeal to be taken out of time). The "technical aspect" of Rule 3(c) as it applies to this case is that parties to an appeal are to be named specifically in the notice of appeal. The defendants did not satisfy this requirement. We have been similarly exigent in the past with respect to the clear requirements of the Rules of Appellate Procedure. *See, e.g., Illas v. Przybyla*, 850 A.2d 937, 943 (R.I.2004) (concluding that appellant's wife and children failed to perfect their appeal because only one notice of appeal had been filed and only one filing fee was paid; and further indicating that, although their claims were derivative of appellant's claim, they constituted separately appealable issues); *Wolf v. National Railroad Passenger Corp.*, 697 A.2d 1082, 1085 n. 1 (R.I.1997) (concluding that, simply because an appeal was prosecuted by one attorney on behalf of multiple parties does not dictate the number of filing fees that must be paid or the number of notices of appeal that must be filed); *Martin v. Lilly*, 505 A.2d 1156, 1159–60 (R.I.1986) (rejecting defendant's contention that his single notice of appeal was sufficient to perfect an appeal in two cases that had been consolidated for trial in Superior Court and declaring that Rule 3(c) required defendant to file two notices of appeal).

We recognize that using the "et al" designation may be an acceptable practice in Superior Court. We note, however, that Rule 3(c) is markedly different from its counterpart, Rule 10(a) of the Superior Court Rules of Civil Procedure. Rule 10(a) states: "In the complaint the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties." Rule 3(c) makes no similar concession in its explicit requirement of specificity, and we certainly do not consider the notice of appeal to fall under the "other pleadings" category identified in Rule 10(a).

The defendants have asked this Court to excuse the absence of specificity in their notice of appeal. We decline to do so. Simply stated, Rule 3(c) requires that the notice of appeal "shall specify the party or parties taking the appeal." Our interpretation of this provision is consistent with the Supreme Court's interpretation of the Federal Rule 3(c) in *Torres*. Although Federal Rule 3(c) was amended as a result of the Supreme Court's holding in *Torres*, Rhode Island Rule 3(c) has not been amended. Accordingly, National Union's appeal is not appropriately before this Court. This conclusion, however, does not end our analysis.

■ The plaintiff has appealed from the grant of a new trial on damages. The trial justice granted a remittitur based on his finding that the jury award was excessive. He concluded that the verdict "was a stealth punitive damage award that was unrelated to the damage proven by Mr. Lennon as a result of the malfunctioning penile prosthesis." He also found that there was insufficient evidence to support the award and that the amount shocked his conscience. He granted a new trial on damages unless plaintiff agreed to a reduced damage award of $400,000.

The plaintiff attempted to accept the remittitur on the condition that defendants waive their right to appeal to this Court. The defendants refused to agree to this qualified acceptance and the trial justice ordered a new trial on damages.

Before this Court, plaintiff argues the trial justice abused his discretion in reducing the damage award because he over-

looked and misconceived the evidence of pain and suffering. Alternatively, should this Court affirm the grant of a remittitur, plaintiff requests an opportunity to comply with the remittitur mandate.

A trial justice can "conditionally correct and modify a jury award that is found to be excessive" through the use of remittitur. *Cotrona v. Johnson & Wales College,* 501 A.2d 728, 733 (R.I.1985). The devices of remittitur and additur are designed to avoid the costs and delays that arise from relitigation of the same issues, while providing a just result for the litigants. *Id.* A remittitur is available only when the jury award clearly appears to be excessive or is found to be the result of the jury's passion and prejudice. *Mazzaroppi v. Tocco,* 533 A.2d 203, 206 (R.I.1987) (citing *Zarrella v. Robinson,* 460 A.2d 415, 418–19 (R.I.1983)).

Our review of the record in this case demonstrates that, in reducing the damage award, the trial justice carefully considered the evidence in this case in light of his charge to the jury and did not overlook or misconceive relevant evidence. Consequently, we decline to set aside his grant of a remittitur. It is our view, however, that plaintiff should be afforded a reasonable opportunity to accept the reduced judgment. *See DeLeo v. Anthony A. Nunes, Inc.,* 546 A.2d 1344, 1348 (R.I.1988) (denying plaintiffs' appeal from reduced damage award, but then allowing them to accept or reject remittitur mandate).

Accordingly, National Union's appeal is dismissed and the case is remanded to the Superior Court. Upon remand, Lennon will be afforded a twenty day period within which he may accept or reject the remittitur. Should plaintiff fail to accept the remittitur, the judgment ordering a new trial as to damages is affirmed.

## 2. Res Judicata and Collateral Estoppel

Dacomed appeals the denial of its motion for summary judgment and motion for judgment as a matter of law arguing that plaintiff's claims were barred by *res judicata* and collateral estoppel. Despite not being a party to *Lennon I,* Dacomed maintains that it was in privity with the defendant in *Lennon I* (Urohealth) and that, therefore, the doctrines of *res judicata* and collateral estoppel should preclude the relitigation of similar claims and issues in *Lennon II.* For the reasons that follow, we are of the opinion that the stipulation of dismissal with prejudice in *Lennon I* in federal court should be given preclusive effect in plaintiff's state court action.

Generally speaking, *res judicata* or claim preclusion "relates to the effect of a final judgment between the parties to an action and those in privity with those parties." *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey,* 635 A.2d 1181, 1186 (R.I. 1994). Claim preclusion prohibits the "relitigation of *all* the issues that were tried or might have been tried in the original suit." *Id.* (Emphasis added.) The doctrine of collateral estoppel or issue preclusion, by contrast, "makes conclusive in a later action on a *different* claim the determination of issues that were actually litigated in a prior action." *Id.* (Emphasis added.)

In this case, we must discern the preclusive effect, if any, in Rhode Island state court, of a stipulated dismissal with prejudice that concluded a case that was in federal court based on its diversity jurisdiction. Our analysis is guided in part by federal common law. *See Semtek International, Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) ("[F]ederal common law governs the claim-preclusive effect of a dismissal

by a federal court sitting in diversity."). In *Semtek,* the United States Supreme Court crafted a federal common law rule of decision requiring that the judgments of a federal court sitting in diversity are to be accorded the same preclusive effect that would be applied by state courts in the state in which the federal diversity court sits. *Id.* In *Semtek* that meant a dismissal with prejudice in a California federal court did not *necessarily* preclude relitigation of the same claims in a Maryland state court, unless California's law so dictated. Here, because the dismissal was entered by a federal court in Rhode Island, our own law of *res judicata* shall control.

■■■ The preclusive effect of voluntary dismissals in Rhode Island is governed by Rule 41(a) of the Superior Court Rules of Civil Procedure. Rule 41(a)(1) provides that a voluntary dismissal is without prejudice "[u]nless otherwise stated in the notice of dismissal or stipulation[.]" If a dismissal is designated "with prejudice" it will be accorded preclusive effect in a subsequent proceeding if the following three requirements are fulfilled: (1) the parties are the same or in privity with the parties of the previous proceeding; (2) an identity of issues in both proceedings; and (3) a valid final judgment on the merits has been entered in the previous proceeding. *Ritter v. Mantissa Investment Corp.,* 864 A.2d 601, 605 (R.I.2005); *Lee v. Rhode Island Council 94, A.F.S.C.M.E., AFL–CIO, Local 186,* 796 A.2d 1080, 1084 (R.I. 2002). We shall address each of these issues in turn.

■■■ "Parties are in privity when 'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests." *Duffy*

*v. Milder,* 896 A.2d 27, 36 (R.I.2006) (quoting *Commercial Union Insurance Co. v. Pelchat,* 727 A.2d 676, 680 (R.I.1999)). The defendant in *Lennon II,* Dacomed, is clearly in privity with its parent corporation, Urohealth, which was a defendant in *Lennon I.* Both the First Circuit Court of Appeals [10] and the Superior Court hearing justice agreed. Notably, in a memorandum filed with this Court, plaintiff did not dispute these findings concerning privity. Rather, plaintiff based his argument exclusively on further aspects of the Superior Court hearing justice's decision with which we cannot agree.

The hearing justice stated, "[a]lthough [Urohealth] and Dacomed are in privity with one another because of their commonality of interests, they remain distinct separate entities." The hearing justice further noted that Dacomed's potential liability in *Lennon II* was premised on a theory of direct liability. She then declared that Dacomed could have claimed the benefit of preclusion in *Lennon II* only if its potential liability was derivative.

■■■ A privity determination does not rise or fall on the distinction between direct and vicarious liability. Under Rhode Island law, privity is defined by a commonality of interests. *Duffy,* 896 A.2d at 36. Despite recognizing that a commonality of interests existed between the two entities, the hearing justice nonetheless rested her decision on the fact that Dacomed and Urohealth were separate and distinct entities. Simply stated, a finding of separate and distinct entities does not define our privity analysis. Consequently, the trial justice's holding in this regard was error.

The Dura–II was initially designed and manufactured by Dacomed. In 1995, Uro-

---

**10.** Although we are not bound by the First Circuit's finding on this issue, we do consider it instructive.

health acquired Dacomed, making it a wholly owned subsidiary. After the acquisition of Dacomed, Urohealth took over the manufacturing and sales of the Dura–II and eventually marketed the Dura–II as a Urohealth product. The record indicates that Urohealth and its insurer, National Union, financed and controlled the defense of all the product liability defendants for the duration of *Lennon I* and *Lennon II*. *See Doe,* 216 F.3d at 162 ("[T]he parent [Urohealth] and subsidiary [Dacomed] are in privity because Urohealth always has taken legal responsibility for the product and Dacomed's actions and stands ready to defend Dacomed in the state case."). Given the foregoing, we conclude that there existed a sufficient commonality of interest between Dacomed and Urohealth for purposes of *res judicata*.

We next consider whether there existed a sufficient identity of issues for purposes of *res judicata*. The product liability claims pled against Urohealth in *Lennon I* are the same as those pled against Dacomed in *Lennon II*, and they arose from the same series of transactions—the manufacturing and implantation of an allegedly defective and unreasonably dangerous product that caused harm to plaintiff. "In determining the scope of the issues to be precluded in the second action, we have adopted the broad 'transactional' rule." *Waters v. Magee,* 877 A.2d 658, 666 (R.I. 2005) (quoting *Ritter,* 864 A.2d at 605). "This rule precludes the re-litigation of 'all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.'" *Id.* (quoting *Ritter,* 864 A.2d at 605). The singular difference between the two proceedings is that plaintiff named more defendants in *Lennon II* with respect to the product liability claims. The damages plaintiff alleged were the same in both proceedings and arose from the same series of transactions. Consequently, we conclude that there was a suf-ficient identity of issues for purposes of *res judicata*.

■ Lastly, we address the issue of whether the voluntary dismissal with prejudice in federal court should be considered a valid final judgment on the merits. Under Rhode Island law, a "[d]ismissal with prejudice * * * constitutes a full adjudication of the merits as if the order had been entered subsequent to trial." *School Committee of North Providence v. North Providence Federation of Teachers, Local 920, American Federation of Teachers (AFL–CIO),* 122 R.I. 105, 109, 404 A.2d 493, 495 (1979). This holding of ours was recognized by the First Circuit in *DiPinto v. Sperling,* 9 F.3d 2 (1st Cir.1993), in which the court cited the *School Committee of North Providence* case and declared:

"Under the Rhode Island doctrine of res judicata (claim preclusion), a final judgment on the merits precludes later litigation of the same claim by the same parties * * *. A dismissal, with prejudice, constitutes a final judgment on the merits." *DiPinto,* 9 F.3d at 4.

Given the foregoing, there can be no dispute that the dismissal with prejudice in *Lennon I* was a valid final judgment on the merits for purposes of *res judicata* in *Lennon II*.

The plaintiff suggests that the holding in *Semtek International, Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32, stands for the proposition that, in reviewing the *res judicata* effect of a prior dismissal, the Court must engage in a detailed review of the prior proceeding to ensure that the dismissal passed on the merits of the case. However, such an interpretation is much too broad a reading of the *Semtek* decision. Although the Court observed that "it is no longer true that a judgment 'on the merits' is necessarily a judgment entitled to claim-preclu-

sive effect[,]" *Semtek*, 531 U.S. at 503, 121 S.Ct. 1021 its statement was limited to that particular context and has no application here. At present, we are confronted with a voluntary dismissal with prejudice.[11] Our well-settled precedent dictates that such a dismissal is accorded the effect of *res judicata. See School Committee of North Providence*, 122 R.I. at 109, 404 A.2d at 495. Given the facts of this case, we see no reason to retreat from our utterly clear statement in that case concerning the effect of a dismissal with prejudice.

## Conclusion

All three requirements pertaining to the application of the doctrine of *res judicata* have been fulfilled in the instant litigation. Consequently, the plaintiff is precluded from relitigating in state court the same claims and issues that first were introduced in federal court or could have been introduced there.

The appeal of the defendant, National Union, is dismissed. The defendant Dacomed's appeal is granted and the judgment against Dacomed is dismissed. The plaintiff's appeal is granted in part and denied in part. The judgment against National Union is modified in accordance with this opinion; the plaintiff will be afforded a twenty day period within which he may accept or reject the remittitur and should plaintiff fail to accept the remittitur, the judgment ordering a new trial as to damages is affirmed. The case is remanded to the Superior Court.

11. We emphasize that the parties, represented by attorneys, stipulated to a voluntary dismissal with prejudice. We are not confronted here with an involuntary dismissal (perhaps as a discovery sanction), and we decline to indicate what our ruling might be in that situation.