DECISION
Plaintiff Lawrence Poirier, Jr. ("Plaintiff"), appeals a Town of Cumberland Zoning Board ("Board of Appeals") decision affirming a decision of the Town of Cumberland Planning Board Decision ("2006 Decision"). Plaintiff has filed the instant appeal against the Board of Appeals and against William Schmidt and Rebecca Altieri ("Defendants"), the current owners of a 12.32-acre parcel of land located at 84 Hines Road in Cumberland, Rhode Island — a parcel also described as Lot 776 on Town of Cumberland Tax Assessor's Plat 18.
In this appeal, Plaintiff asserts that the Planning Board erroneously held that the former owners of Defendants' property had been given the right to create an "additional buildable lot" on their property pursuant to a decision rendered by the Planning Board on January 28, 1998 ("1998 Decision"). Subsequent to Plaintiff's filing of this appeal, Defendants moved for summary judgment based on the Plaintiff's alleged lack of standing to appeal the 2006 Decision and the untimeliness of this appeal. In light of the common facts and legal arguments raised in both Defendants' motion for summary judgment and Plaintiff's appeal, this Court will render a consolidated decision on both matters. For the reasons stated below, this Court denies *Page 2 
Defendants' motion for summary judgment, but will affirm the decision of the Board of Appeals and deny Plaintiff's appeal.
 FACTS AND TRAVEL
In 1997, Defendants' predecessors-in-interest, Austin and Marjorie Hines, submitted an application to the Planning Board to subdivide a large parcel of land located on Hines Road in Cumberland, Rhode Island, identified as Assessor's Plat 18, Lot 31 into six lots. Defendants' property is one of the six lots created from the Hines Property. Notice of the public informational meeting regarding the Hines's Master Plan was served on all property owners within two hundred feet of the Hines Property and notice was published in the Woonsocket Call as required under G.L. 1956 § 45-23-40 and Section 5(G)(1) of the Cumberland Subdivision Regulations. Following the public informational meeting, the Planning Board held a public hearing on the Preliminary Plan submitted by Austin and Marjorie Hines. Notice of the public hearing, which took place on January 28, 1998, was sent by certified mail, return receipt requested, to every property owner within two hundred feet of the Hines Property and notice was published in the Woonsocket Call, in accordance with G.L. 1956 § 45-23-42 and Section 5(G)(3) of the Cumberland Subdivision Regulations.
The Preliminary/Final Stage/Major Residential Subdivision Plan ("Major Subdivision Plan") submitted by the Hines family originally sought to subdivide the 21.849 acre parcel into seven lots, but was later amended to include a total of six lots. Lots 1-5 ranged in size from 80,000 square feet to 91,505 sq. feet and Lot # 6 — Defendants' property — was 536, 605 square feet (12.32 acres) with frontage on Iroquois Road and Hines Road.
During the January 28, 1998 Planning Board meeting, John Caito, the civil engineer for the Hines family, explained that under the amended Major Subdivision Plan, "only one *Page 3 
additional buildable lot will be subdivided out of Lot # 6" and that language would be included in the plans memorializing that restriction. (Appendix to Defendants' Appeal Brief at APP0001; Plaintiff's Exhibit A.) The Planning Board approved the Major Subdivision Plan at the January 28, 1998 meeting and issued the 1998 Decision stating that the Hines family's Petition for Final Plat Stage Approval of a Major Residential Subdivision was approved. (Id. at APP0003-APP0006.) Although the Planning Board did not make a transcript or otherwise record the exact wording of the motion to approve the Major Rental Subdivision, the minutes of the meeting state that the plan was "subject to no more that one house lot being built on Lot # 6 and also that no public access road be installed from Lot # 6 and that these conditions be noted on the plans." (Plaintiff's Exhibit A.)
The 1998 Decision provides that "there shall be no more than one (1) additional buildable lot and (1) open space lot created in the future from subdivision lot # 6." (Appendix to Defendants' Appeal Brief at APP0005; Plaintiff's Exhibit C.) A Final Subdivision Plan was then prepared that included a notation restating the Planning Board's finding regarding the additional buildable lot on Lot # 6. (Id. at APP0007; Plaintiff's Exhibit B.) According to the Final Subdivision Plan, "[t]here shall be no more than one (1) additional buildable lot and one (1) open space lot in the future from Subdivision Lot # 6." (Id.; Plaintiff's Exhibit B.) The Final Subdivision Plan was recorded in the Cumberland land evidence records on April 2, 1998. (Id.) No party timely appealed the Planning Board's 1998 Decision.
In December 1999, Defendants purchased their property — identified in the 1998 Decision as Lot # 6 — from the Hines family. On or about January 3, 2006, Defendants submitted an application for a Major Subdivision and Master Plan approval ("Subdivision Application") to subdivide their property into two six-acre lots. Defendants filed the Subdivision *Page 4 
Application to formally subdivide the Subject Property into two buildable lots. As part of Defendants' Subdivision Application, Defendants noted the 1998 Decision allowing for the creation of "one (1) additional buildable lot" on their property.
Defendants sent notice to property owners within two hundred feet of their property and published notice in the Woonsocket Call in accordance with G.L. 1956 § 45-23-40 and Section 5(G)(1) of the Cumberland Subdivision Regulations. The notice stated that Defendants' Subdivision Application was being considered by the Planning Board. However, Plaintiff's name was not included on the list of abutters and, therefore, did not receive formal notice of the hearing.
On January 25, 2006, the Planning Board held its first Public Information Meeting regarding Defendants' Subdivision Application. Plaintiff attended the meeting with abutting property owners and had the opportunity to testify in opposition to Defendants' application. Plaintiff objected to the subdivision on three grounds. First, Plaintiff stated that the Subject Property was meant to be used as a "horse farm." (Id. at APP0018.) Second, Plaintiff asserted that the Subject Property was in close proximity to wetlands. (See id.) Finally, Plaintiff stated that he did not like the proposed stone driveway. (See id.) The public hearing on Defendants' Subdivision Application was then continued until February 22, 2006.
During the February 22, 2006 meeting, Plaintiff again objected to the subdivision on the basis that in the past Defendants' property had trouble with water and that the Defendants' property is in close proximity to wetlands. (Id. at APP0021.) Plaintiff presented no documentary evidence or expert testimony to support his objection regarding the wetlands. At the same meeting, abutters claimed that the 1998 Decision was unclear regarding whether the decision allowed for the creation of an additional buildable lot on the Subject Property or only *Page 5 
one buildable lot in total. (Id. at APP0020-APP0021.) The abutters alleged that the language in the January 28, 1998 meeting minutes created an ambiguity regarding the Planning Board's intent in approving the Final Subdivision Plan in 1998. (Id.) In response to the abutters' claims, the Solicitor for the Town of Cumberland stated that the Planning Board was bound by the terms of recorded decision. (Id. at APP0022.) The Planning Board then voted to continue the public hearing to March 29, 2006 and requested a written opinion from the Town Solicitor "regarding what was binding." (Id.)
On March 20, 2006, the Solicitor issued a written opinion stating that the Planning Board should look beyond the 1998 Decision and "consider a review of the [January 29, 1998] meeting minutes in making its determination as to whether the applicant can proceed with their proposed minor subdivision." (Id. at APP0023-APP0024.) During the March 29, 2006 hearing, however, the Solicitor reiterated the initial advice that the Planning Board was bound by the 1998 Decision and should only look to the meeting minutes and the intent of the Planning Board if the 1998 Decision was ambiguous. (Id. at APP0032-APP0033.)
Mr. Caito, the engineer of record for the 1998 Major Subdivision Application, explained that, in 1998, the Planning Board was concerned that Lot # 6, which is 12.3 acres, would be subdivided into multiple smaller lots on a cul-de-sac. (Id. at APP0029.) In order to avoid a subdivision of Lot # 6 into multiple smaller lots, the Planning Board decided, in 1998, that Lot # 6 could be divided into one additional buildable lot and one open space lot. (Id.) Mr. Caito also testified that the January 28, 1998 meeting minutes regarding the vote were not accurate and that he stated during that meeting (and his notes reflect) that the Hines family had permission to create one additional buildable lot out of Lot # 6. (Id. at APP0029-APP0030.) In addition, Mr. Caito pointed out that the final paragraph of the January 28, 1998 meeting minutes clearly states *Page 6 
that "only one additional buildable lot will be subdivided out of Lot # 6, so you have one lot that's buildable and one additional buildable lot." (Id. at APP0030).
After taking testimony from Mr. Caito, the Planning Board returned to the Solicitor's opinion that the Planning Board look to the 1998 Decision as reflected in the Final Subdivision Plan, unless the 1998 Decision was ambiguous. Three of the Planning Board members specifically stated that there was no ambiguity. Having found no ambiguity in the 1998 Decision, the Planning Board determined that the 1998 Decision provided for "no more than one additional buildable lot" on Defendants' property. (Id. at APP0049-APP0050 and APP0056-APP0057.) Accordingly, the Planning Board's 2006 Decision allowed for the creation of one additional buildable lot in reviewing the Major Subdivision application. Upon review, however, the Planning Board denied the Owners' application for Master Plan approval.
On May 22, 2006, Mr. Poirier appealed the 2006 Decision to the Town of Cumberland Zoning Board, sitting as a Board of Appeals. (Id. at APP0058-APP0065.) On June 20, 2006, the Board of Appeals denied Plaintiff's appeal and sustained the Planning Board decision to accept the 1998 Decision regarding the additional buildable lot on the Subject Property. (Id. at APP0073-APP0074.) According to the Board of Appeals, the note on the Subdivision Plan stating that "[t]here shall be no more than one additional buildable lot and one open space lot created in the future from Subdivision Lot # 6 [the Subject Property]" was properly accepted by the Planning Board. (Id. at APP0067.) The Board of Appeals reasoned that the 1998 Decision was not ambiguous and that the Planning Board, after sufficient discussion of the issue and advice from the Solicitor, had no reason to look to the 1998 meeting minutes for guidance. (Id. at APP0067-APP0068.)
On August 30, 2006, Plaintiff filed the instant appeal in Rhode Island Superior Court *Page 7 
appealing the Board of Appeal Decision recorded August 15, 2006. Plaintiff alleges that the Planning Board's 2006 Decision affirming the 1998 Decision and the Board of Appeals decision to affirm the Planning Board were erroneous, arbitrary, capricious, contrary to the law, or in excess of the Planning Board's constitutional and statutory authority.
Additionally, Defendants have appealed the denial of Master Plan approval in Schmidt v. Zoning Bd. of Appeals for Cumberland, C.A. No. 06-4661. That case, on the propriety of the Planning Board's denial of Master Plan approval, is not before this Court at this time.
 STANDARD OF REVIEW
This Court will rule on two matters in this combined decision: Defendants' Motion for Summary Judgment and Plaintiff's appeal of the Board of Appeals decision. With regard to Defendants' motion, the Rhode Island Supreme Court has held that, pursuant to R.I. Super. R. Civ. P. 56(c), "summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings, and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Assoc., 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal,419 A.2d 297 (R.I. 1980)). "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law." Konar v. PFL Life Ins. Co., 840 A.2d 1115, 1117 (R.I. 2004). Furthermore, the party opposing the motion for summary judgment carries "the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions."Tanner v. Town Council of East Greenwich, 880 A.2d 784, 791 (R.I. 2005) (quoting Lucier v. Impact Recreation, Ltd., *Page 8 864 A.2d 635, 638 (R.I. 2005)). Only "[w]hen an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in light most favorable to the party opposing the motion, reveals no such [disputed material issue of fact,] the suit is ripe for summary judgment." Industrial National Bank v. Peloso,397 A.2d 1312, 1313 (1979).
For Plaintiff's appeal, the Rhode Island Land Development and Subdivision Review Act of 1992, §§ 45-23-26 to 45-23-74, prescribes the applicable standards of review. Prior to review by this Court, the Board of Appeals may reverse the Planning Board only on finding the Planning Board's decision erroneous due to "prejudicial procedural error, clear error, or a lack of support by the weight of the evidence in the record." G.L. 1956 § 45-23-70(a). In reviewing the decision of the Board of Appeals, this Court utilizes, "the `traditional judicial review' standard that is applied in administrative-agency actions." Restivo v.Lynch, 707 A.2d 663, 665 (R.I. 1998) (citing E. Grossman Sons, Inc. v.Rocha, 373 A.2d 496, 501 (R.I. 1977)). Therefore, this Court must not consider witness credibility, weigh the evidence, or make findings of fact. Munroe v. Town of E. Greenwich, 733 A.2d 703, 705 (R.I. 1999) (citing Kirby v. Planning Bd. of Review of Middletown, 634 A.2d 285, 290
(R.I. 1993)). Pursuant to G.L. 1956 § 45-23-71(c), the Court:
 shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law; *Page 9 
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Therefore, this Court's will confine its review to a search of the record to ascertain whether the decision of the Board of Appeals "rests upon competent evidence or is affected by an error of law."Munroe, 733 A.2d at 705 (citing Kirby, 634 A.2d at 290). This Court may reverse a decision of the Board of Appeals only if the record is "completely bereft of competent evidentiary support." Sartor v. CoastalResources Mgmt. Council, 542 A.2d 1077, 1083 (R.I. 1988).
 ANALYSIS I Plaintiff's Status as an Aggrieved Party
Defendants have alleged that Plaintiff is not an "aggrieved party" under applicable Rhode Island law and, therefore, has no standing to file this appeal. They argue that the Plaintiff does not own a property abutting the Defendants' property; accordingly, they contend, Plaintiff has no grounds for suing to restrict the Defendants' use of their land. Defendants acknowledge that Plaintiff holds a life estate in the property at 98 Iroquois Road, Cumberland, Rhode Island. (Defendant's Exhibit H.) They allege that a holder of a life estate does not qualify as an owner under Rhode Island statutes and the applicable local subdivision regulations. The property at 98 Iroquois Road is located within two hundred feet (200') of the perimeter of Defendants' land in question.
Plaintiff counters by analyzing Rhode Island's statutory notice requirements. As noted by Plaintiff, G.L. 1956 § 45-23-42(b) requires "certified mail, return receipt requested notice to each owner within the notice area" regarding a public hearing for a proposed land development. *Page 10 
Section 45-23-42(c)(1) states that:
 the distance for notice of the public hearing shall be specified by the local regulations. The distance may differ by zoning district and scale of development. At a minimum, all abutting property owners to the proposed development's property boundary shall receive notice.
According to Section 9(B) of the Town of Cumberland's Subdivision Regulations, notice for public hearings "shall be sent to each owner of property within two hundred (200') feet of the perimeter of the property, by certified mail, return receipt requested, of the time and place of the hearing not less than ten (10) days prior to the date of the hearing." Section 9(C)(1), entitled "Notice Area," states that "the distance for notice of the public hearing shall be to all owners of property within two hundred feet (200') of the perimeter of the entire property under consideration." Section 1(B) defines an "Abutter" as an "owner of land within two hundred feet (200') of the subdivision as determined from the most recent public records."
Section 45-23-32 of the Rhode Island General Laws provides that "[w]here words or phrases used in this chapter are defined in the definitions section of either the Rhode Island Comprehensive Planning and Land Use Regulation Act, § 45-22.2-4, or Rhode Island Zoning Enabling Act of 1991, § 45-24-31, they have the meaning stated in those acts." Section 45-24-31(4)(ii) of the Rhode Island Zoning defines an "Aggrieved Party" as "anyone requiring notice pursuant to this chapter." With regard to notice requirements for public hearings, § 45-24-53(c)(2) requires that:
 [w]ritten notice of the date, time and place of the public hearing and the nature and purpose of the hearing shall be send to all owners of real property whose property is located in or within not less than two hundred feet (200') of the perimeter of the area proposed for the change, whether within the city or town or within an adjacent city or town. The notice shall be sent by registered or certified mail to the last known address of the owners, as shown on the current real estate tax assessment record of the city or town in *Page 11 
which the property is located.
In order to demonstrate that Plaintiff required statutory notice of the public hearing, Plaintiff's life estate interest in the 98 Iroquois Road property must qualify him as an "owner" of that property within the meaning of the applicable statutes. The Supreme Court of Connecticut provides a reasoned means for evaluating whether Plaintiff qualifies as an owner under the Rhode Island statute.
In Smith v. Planning Zoning Bd. of the City of Milford, the Connecticut Supreme Court noted that:
 [b]y the common law, a tenant for life, where he is under no restriction in the deed by which he holds, could use the land in the same manner as the holder in fee. Every life tenant had the right to the undisturbed possession of the land and to the income and profits derived from such land. C. Moynihan, Introduction to the Law of Real Property (1962 Ed.) c. 2, § 12. In addition, the alienable quality of a life estate allowed a life tenant to convey his whole estate to a third person. Id. A life tenant, as a holder of a freehold estate, was considered "seised" of the land. Id., c. 4, § 1. The concept of seisin has diminished somewhat in importance today. Under the common law, however, it was extremely significant. It connoted something beyond possession. It meant ownership "in so far as the common law admits of ownership"; and in many practical respects, the interest of the life tenant was treated as essentially equivalent to outright ownership. Id., c. 4, § 2.
524 A.2d 1128, 1131 (Conn. 1987). According to the Connecticut Supreme Court, "the incidents of a plaintiff's ownership of the land as a tenant during [the plaintiff's] life are a sufficient ownership of the locus to entitle [the plaintiff] to recognition as a `person owning land' with the right to appeal from a decision of a zoning board of appeals."Id. This Court concurs with this analysis. As the owner of a life estate in real property within two hundred feet (200') of Defendants' property, Plaintiff is an "abutter" and, therefore, an "aggrieved party" under Town of Cumberland municipal ordinances and Rhode Island statutory law. Consequently, Plaintiff *Page 12 
has standing to make the instant appeal.
 II Timeliness of Plaintiff's Appeal
Defendants argue that Plaintiff did not file a timely and proper appeal before this Court. They assert that the Town of Cumberland Planning Board's action and decision in March 2006, in reviewing a prior 1998 decision of a predecessor Planning Board concerning Defendants' property at issue, was in excess of the 2006 Planning Board's authority, and was unlawful because the 2006 Planning Board "lacked authority to reconsider the 1998 Decision under the doctrine of administrative finality and res judicata." (Defendants' Memorandum at 11). However, the Court concludes that such an assertion does not have merit.
On January 28, 1998, the Planning Board held a public hearing on Hines' petition to subdivide their existing Lot 3 on Assessor's Plat 18, known as Hines Farms, into six new lots. After the hearing, the Planning Board voted to approve this new subdivision plan, subject to the following conditions: That there shall be no more than one (1) additional buildable lot and one (1) open space lot created in the future from subdivision lot # 6. That no public access road be constructed to gain access to Lot # 6. (Plaintiff's Exhibit A.) The Final Subdivision Plan — prepared by John P. Caito Corporation and approved by the Planning Board on 1/28/98 — notes the Planning Board's conditions under a "Notes" section. (Plaintiff's Exhibit B.) Based on the Final Subdivision Plan, a new residential building was constructed on Lot # 6 with access off Hines Road by a private driveway. (Plaintiff's Exhibit C.)
On January 25, 2006, the Town of Cumberland Planning Board held a public informational hearing on Defendants' new subdivision plan at which Plaintiff and other abutters appeared and testified in objection to the proposed subdivision. At the conclusion of that hearing, the Planning Board voted to continue the matter for further discussion and information *Page 13 
to their next monthly meeting. (Plaintiff's Exhibit D.) At the next public hearing on February 22, 2006, an abutter, Jillian Hartwell, directed the Board's attention to the prior subdivision approval in 1998 and questioned whether the Planning Board could consider and approve a new buildable lot when an additional buildable house lot was subsequently built pursuant to the 1998 Planning Board decision. The Planning Board then considered whether the minutes of the 1998 Planning Board proceedings conflicted with the wording of the Board's recorded decision.
The Board referred that matter and legal issue to the Cumberland Town Solicitor for a legal opinion and legal guidance. (Plaintiff's Exhibit E.) On March 20, 2006, the Town Solicitor submitted a written legal opinion to the Planning Board in response to their request, in which the Solicitor acknowledged an apparent "ambiguity" or discrepancy between the written minutes of the Board's January 28, 1998 meeting and the recorded Decision based on that meeting. The Solicitor concluded that "[i]f the Planning Board determines that there is an ambiguity in the language pertaining to the Decision and notes, it must look to other sources to resolve the conflict." (Plaintiff's Exhibit F.)
Defendants argue that the principles of administrative finality and res judicata bar Plaintiff from challenging or opposing Defendants' new subdivision application. According to Defendants, "[t]he Planning Board's reconsideration of the buildable lot issue in 2006 was a nullity, because the same issue had already been decided, resulting in a final judgment between the parties." Plaintiff, however, counters that Defendants base their argument on the premise that the 1998 Decision is clear and precise and not subject to a different interpretation.
The judicial doctrine of "res judicata or claim preclusion `relates to the effect of a final judgment between the parties to an action and those in privity with those parties.'" Lennon v. Dacomed Corp.,901 A.2d 582, 590 (R.I. 2006) (quoting E.W. Audet Sons, Inc. v. Fireman's *Page 14 Fund Insurance Co. of Newark, New Jersey, 635 A.2d 1181, 1186 (R.I. 1994)). The underlying policy of "res judicata is to economize the court system's time and lessen its financial burden. This doctrine ensures that judicial resources are not wasted on multiple and possibly inconsistent resolutions of the same lawsuit." Town of Richmond v.Wawaloam Reservation, Inc., 850 A.2d 924, 932 (R.I. 2004). Accordingly, "res judicata operates as an absolute bar to a cause of action [when] there exists (1) identity of parties, (2) identity of issues and (3) finality of judgment." Id. Its effect is to "render a previous judgment conclusive with respect to any claims or defenses that a party raised or could have raised in the previous proceeding." Id.
In Wawaloam Reservation, Inc., the Rhode Island Supreme Court explicitly acknowledged that the doctrine of res judicata applies to zoning board decisions in situations where the board was acting the in "a quasi-judicial capacity." Id.; See also, Department of Corrections ofState of Rhode Island v. Tucker, 657 A.2d 546, 549 (R.I. 1995) (holding that the doctrine applies to a "decision of a quasi-judicial administrative tribunal" in the same way as it does to a court judgment"). A zoning board is acting "in a quasi-judicial capacity when it affords the parties substantially the same rights as those available in a court of law, such as the opportunity to present evidence, to assert legal claims and defenses, and to appeal from an adverse decision." Wawaloam Reservation, Inc., 850 A.2d at 933.
The Rhode Island Supreme Court, however, has "cautioned that applying res judicata to decisions of zoning boards of review might `deny a landowner once refused relief the right to a reconsideration of an application based upon intervening circumstances resulting in a deprivation of all beneficial use of his property.'" Id. at 933 n. 3 (quoting Marks v. Zoning Board of Review of Providence, 98 R.I. 405,406, 203 A.2d 761, 763 (1964)). Consequently, "a zoning decision should be given preclusive effect in later proceedings only if the issues in both proceedings were *Page 15 
identical." Id.
Similarly, pursuant to the doctrine of administrative finality,
 "when an administrative agency receives an application for relief and denies it, a subsequent application for the same relief may not be granted absent a showing of a change in material circumstances during the time between the two applications. . . . This rule applies as long as the outcome sought in each application is substantially similar, . . . even if the two applications each rely on different legal theories. . . . Administrative action is not final, however, if the first decision was invalid." DeBourgknecht v. Rossi, 798 A.2d 934, 938 (R.I. 2002) (quoting Johnston Ambulatory Surgical Associates, Ltd. v. Nolan, 755 A.2d 799, 808 (R.I. 2000)).
In the instant matter, the record indicates that the 2006 Planning Board found the 1998 Decision to be ambiguous; thus, necessitating a review of the previous record to determine whether the 1998 Decision permitted Defendants to proceed with their development project. Consequently, it relied upon written notes summarizing the 1998 proceedings in order to determine the meaning of the 1998 Decision.
In the light of the foregoing, the Court finds that the instant matter involved the interpretation of a previously ambiguous Planning Board Decision. Accordingly, the Court concludes that the proceedings before the 2006 Planning Board concerned an "issue that was not litigated" before the 1998 Planning Board, and that the doctrines of res judicata and administrative finality do not apply. The Court further concludes that, as a result, Plaintiff timely and properly filed the instant appeal. Consequently, the Court will review the case and render a decision on the merits of the appeal.
 III Review of the Planning Board's Decision
As noted above, this Court must use "the `traditional judicial review' standard that is applied in administrative-agency actions,"Restivo, 707 A.2d at 665, and, therefore, may not *Page 16 
"consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Munroe, 733 A.2d at 705. This Court may only reverse or modify the decision of the Board of Appeals if it was affected by error of law, was clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, or was arbitrary or capricious. See G.L. 1956 § 45-24-69(d). In this matter, the Planning Board heard testimony on February 22, 2006, and March 29, 2006, from abutters regarding alleged ambiguities in the record leading to the 1998 Decision. In response to these allegations, the Planning Board sought the advice of legal counsel and after consideration of the testimony and relevant documents concluded that the 1998 Decision and the Final Subdivision Plan were unambiguous. The Planning Board ultimately found that the 1998 Decision allowed for one additional buildable lot that could be created in the future on the 12.32-acre parcel.
According to the Supreme Court of Rhode Island,
 [i]t is the well-settled law in this state that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance. Where it appears from the record that a decision was reached in reliance upon such knowledge, it is considered by this court to constitute legal evidence sufficient to support such a finding.
Monforte v. Zoning Bd. of Review, 176 A.2d 726, 727-728 (R.I. 1962) (citing Woodbury v. Zoning Bd. of Review, 82 A.2d 164, 166 (R.I. 1951)). The reliable, probative and substantial evidence of the entire record indicates that the Planning Board heard testimony, reviewed the pertinent documents, listened to the advice of the Town Solicitor and rendered a decision that allowed the subdivision application process to continue. Therefore, the record does not indicate that the Planning Board's 2006 Decision interpreting its 1998 Decision was clearly erroneous, arbitrary or capricious, or in violation of law. *Page 17 
 CONCLUSION
Upon review of the entire record, this Court finds that the decision of the Board of Appeals is not clearly erroneous in view of the reliable, probative, and substantial evidence of record, or in violation of statutory provisions. Plaintiffs' substantial rights have not been prejudiced. Therefore, this Court affirms the decision of the Board of Appeals.
 Counsel shall prepare an appropriate judgment for entry. *Page 1